**ESTILL COUNTY BOARD OF EDUCATION; Kentucky School Boards Insurance Trust, Plaintiffs,**

v.

**ZURICH INSURANCE COMPANY, Defendant–Appellant,**

**The Hartford Fire Insurance Company; Continental Casualty Company, Defendants,**

**J.E. Black, P.L.L.C.; James E. Black, Defendants–Appellees.**

No. 02–5219.

United States Court of Appeals, Sixth Circuit.

Dec. 4, 2003.

Matthew P. Cook, Stefan R. Hughes, Cole & Moore, Bowling Green, KY, David C. King, Swift, Currie, McGhee & Hiers, Atlanta, GA, for Defendant–Appellant.

BEFORE: SILER, BATCHELDER, and COOK, Circuit Judges.

BATCHELDER, Circuit Judges.

Zurich Insurance Company ("Zurich") appeals the order of the district court granting the motion of Defendants J.E. Black, P.L.L.C., and J.E. Black (collectively "Black") for judgment on the pleadings in this professional malpractice action brought by Zurich as subrogee of its insureds, the Board of Education of Estill County, Kentucky, and the Kentucky School Boards Insurance Trust. Because Zurich's claims are barred by the statute of limitations, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Estill County Board of Education (the "Board") contracted with Black to inspect and, if appropriate, approve the proposed construction site for a new middle school. Black inspected and approved the site and construction of the school was completed in August, 1998. On or about April 5, 1999, the Board discovered damage to the school "due to the rising of earth beneath the building." The Board filed a claim with its insurer, Zurich, which in January 2000 offered to settle the claim for $107,000. Because damage to the building was ongoing and the Board anticipated that the amount of the damage would be well in excess of $107,000, no settlement was reached.

On July 1, 1999, Hartford Fire Insurance Company ("Hartford") succeeded Zu-

rich as the Board's insurer. The Board filed a complaint for declaratory judgment in Kentucky state court on September 1, 2000, against both Zurich and Hartford, seeking a determination of the respective insurers' liability for the damage. Hartford timely removed the matter to the federal district court. On May 17, 2001, the district court granted Zurich's motion to deposit funds into the court.

On May 21, 2001, Zurich, as subrogee of the Board, filed a separate action in federal court against Black for professional malpractice, alleging, among other things, that the damage to the school building was due solely to Black's negligence and breach of contract. After filing an answer, Black moved for judgment on the pleadings under Fed. R. Civ. Proc. 12(c). The district court consolidated the two cases on November 15, 2001, and on January 11, 2002, granted Black's motion for judgment on the pleadings. The court first determined that Zurich's claim is one of subrogation, not indemnity. *Bd. of Educ. of Estill County v. Zurich Ins. Co.*, 180 F.Supp.2d 890, 892 (E.D.Ky.2002). Because this is a subrogation action, the court held, "Zurich ... is bound by the same limitations period that would apply were it the Board ... bringing the claim." *Id.* at 892. And because the action is for professional malpractice, the court held, it is governed by the provisions of Ky.Rev.Stat. § 413.245, which sets forth a one-year statute of limitations "from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered." *Id.* at 893. Finally, the court found that the Board learned on April 5, 1999, that the building had suffered damage, and this knowledge triggered the running of the statute of limitations even though the nature and full extent of the damage may not have been certain on that date. *Id.* at 893–94. Therefore, the court

concluded, Zurich's claim is time-barred. *Id.* at 894.

Zurich timely filed its notice of appeal.

## II. DISCUSSION

We review de novo a district court's order granting judgment on the pleadings. *See Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir.2001). Construing the complaint in the light most favorable to the non-moving party, we accept as true the facts as pled by that party. *See Mixon v. Ohio*, 193 F.3d 389, 399–400 (6th Cir.1999).

Zurich does not assign as error the district court's findings that this claim is one of subrogation, and that the claim is for professional malpractice, and therefore is governed by the one-year statute of limitations governing professional malpractice claims. Rather, Zurich argues that even if the statute of limitations governing malpractice actions is applicable here, the district court erred in holding this action time-barred. First, Zurich argues that so long as the amount of damages remains speculative, the statute of limitations does not begin to run. Second, it argues that the statute of limitations on a subrogation claim does not begin to run until the insurer/subrogee makes payment to its insured. And third, it argues that the statute should be equitably tolled while the insurer/subrogee attempts in good faith to settle the claim. We find no merit in any of these arguments.

### A. Certainty of Damages.

█ The district court correctly concluded that this action is governed by Kentucky's one year statute of limitations for professional negligence. That statute provides, in pertinent part:

[A] civil action ... arising out of any act or omission in rendering, or failing to render, professional services for oth-

ers shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured.

Ky.Rev.Stat. § 413.245. The question before us is when that one year began to run.

Kentucky courts have interpreted this statute in the context of legal malpractice actions to mean that the injury is discovered, and therefore the statute of limitations begins to run, only when the legal harm has become "fixed and non-speculative." *Alagia, Day, Trautwein & Smith v. Broadbent,* 882 S.W.2d 121, 126 (Ky.1994). *See also Hibbard v. Taylor,* 837 S.W.2d 500, 501–02 (Ky.1992) (discovery "that a wrong has been committed" begins the running of the statute of limitations) quoting *Conway v. Huff,* 644 S.W.2d 333 (Ky. 1982); *Michels v. Sklavos,* 869 S.W.2d 728, 730 (Ky.1994) (recognizing need for a fixed legal injury in attorney negligence actions to establish the commencement of the statute of limitations). We find no reason to confine this principle to the attorney malpractice context as neither the statute nor the Kentucky courts differentiate among the various kinds of professional negligence. We believe that the district court aptly framed the issue in the instant case when it asked "whether the damage to the middle school noticed by plaintiff on or about April 5, 1999 may be said to be 'fixed and non-speculative.'" *Zurich,* 180 F.Supp.2d at 893, quoting *In re Ky. Cent. Life Ins. Co.,* 2001 WL 726781 (Ky.Ct.App. 2001).

The district court correctly concluded that "the phrase [fixed and non-speculative] is more properly interpreted as tolling the limitations period for professional negligence claims until plaintiff is certain that damages will indeed flow from defendant's negligent act." *Id.* We think that the Kentucky statute requires that in order for the limitations period to commence,

the plaintiff must be aware that he has in fact been damaged by the defendant's negligence. The statute does not require that the plaintiff be aware of the precise dollar amount or even the exact extent of the damage.

Appellant's protestations to the contrary notwithstanding, the fact that the parties could not agree on the cost of repairs, or which insurance company would be responsible for them, does not render the alleged legal injury "speculative." The process of litigation itself is where the *amount* of damages become fixed and non-speculative. That litigation cannot commence until the *fact* of damage is fixed. If appellant's argument were taken to its logical conclusion, the statute of limitations could conceivably not start running until the end of a trial—an absurd result.

Zurich makes two additional arguments to support its view that the damages remained speculative, and the statute of limitations did not begin. We find neither persuasive. First, Zurich contends that "new damage is occurring and increasing since the original discovery." That the physical damage may be increasing, however, does not mean that the fact of injury was not "fixed" upon the initial discovery of the damage. Second, Zurich argues that until settlement negotiations with its insured were finally unsuccessful, the Board could not know whether it had been damaged. But settlement negotiations with an insured do not affect the fact of damage; those negotiations are for the purpose of coming to an agreement on the amount of compensation due the insured as a result of the damage, and but for the damage itself, there would be no need for the compensation, let alone the negotiation. These arguments are without merit.

### B. Equitable Subrogation.

Zurich argues in the alternative that the statute of limitations did not begin

to run, due to equitable subrogation, until it made a payment either to its insured or the court. In support of that argument, Zurich quotes from *Employers Mut. Liab. Ins. Co. of Wisconsin v. Griffin Constr. Co.*, 280 S.W.2d 179, 181 (Ky.1955) (citing 29 Am.Jur., Insurance § 1335):

> The general rule is that upon payment of a loss, the insurer, or insurers in the case of coinsurance, is entitled to be subrogated pro tanto to any right of action which the insured may have against a third person whose negligence or wrongful act caused the loss. Although many policies, including policies in the standard form, now provide for subrogation, and thus determine the rights of the insurer in this respect, the equitable right of subrogation is the legal effect of payment, and inures to the insurer without any formal assignment or any express stipulation to that effect in the policy.

Zurich misses the point. *Griffin Constr. Co.* dealt with the nature of subrogation and the distinctions between legal or equitable subrogation and conventional subrogation. Nothing in the quoted language–or in the case in general–speaks to the question of when the statute of limitations begins to run against a tortfeasor. Indeed, the very language relied on by Zurich makes the point: upon payment of the loss, the subrogee is subrogated to "any right of action which the insured may have against" the wrongdoer. The Board had a right to bring a professional malpractice against Black so long as the limitations period prescribed by statute had not expired. As we have explained above, the statutory period began to run from the date that the Board discovered the fact of damage to the school building, and expired one year from that date. Once the statutory period had expired, the Board no longer had any right of action against Black. Neither, as the district court correctly held, did Zurich.[1]

### C. Equitable Tolling.

■ Zurich's final argument is that even if the statute of limitations on this professional malpractice claim began to run on the initial discovery of damage, it should be equitably tolled. In support of this argument, Zurich cites to *EEOC v. Kentucky State Police Dept.*, 80 F.3d 1086 (6th Cir.1996). Again, Zurich misses the mark.

*EEOC*, of course, is an employment discrimination case, brought pursuant to federal law, and is simply not apposite to the question of whether a state statute of limitations for professional malpractice actions is subject to equitable tolling. Zurich has pointed us to no Kentucky authority–and we have found none–in support of the proposition that the Kentucky statute of limitations for professional malpractice is subject to equitable tolling. Even assuming, for the sake of argument, that it is, Zurich has wholly failed to make the case for tolling under the requirements we identified in *EEOC*. In that case, we enumerated five factors to consider in determining whether equitable tolling is appropriate:

> (1) lack of actual notice ...; (2) lack of constructive knowledge ...; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the notice requirement.

*Id.* at 1094 (quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir.1988) (internal quotations omitted)).

---

1. Zurich did not include in the Joint Appendix copies of the contract of insurance with the Board, and we are not privy to its exact terms. But it may be significant that Zurich has not mentioned any impediment to its requiring the Board, within the requisite statutory period, to bring an action against Black to preserve Zurich's subrogation rights.

Zurich makes no reference to any of these five factors, arguing instead that the statute of limitations should be equitably tolled because the Board rejected its settlement entreaties and did not itself file suit against Black. Neither of these allegations bears any relation to our test, which Zurich patently fails. Zurich (1) had actual notice of the damage well more than one year before it filed this action; (2) had actual as well as constructive knowledge; (3) was arguably not diligent in pursuing its rights; (4) neither showed the absence of prejudice to Black nor denied any such prejudice; and (5) was not reasonable in "remaining ignorant of" the applicable statute of limitations. *Id.* Zurich's claim that the statute of limitations should be tolled is wholly without merit.

For all of the foregoing reasons, we AFFIRM the judgment of the district court.