RENDERED: MAY 10, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1341-MR

MILLERS LANE CENTER, LLC, A
KENTUCKY LIMITED LIABILITY
COMPANY AND MILLERS LANE
CENTER, LLC, A FLORIDA LIMITED
LIABILITY COMPANY                                                APPELLANTS


|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE ANNIE O'CONNELL, JUDGE |
|  | ACTION NOS. 21-CI-007148 & 22-CI-001338 |


MORGAN & POTTINGER, P.S.C.;
JAMES P. MCCROCKLIN; AND
MOSLEY & TOWNES, PLLC                                             APPELLEES

AND

NO. 2022-CA-1398-MR

JAMES P. MCCROCKLIN AND
MOSLEY & TOWNES, PLLC                                       CROSS-APPELLANTS


|  | CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE ANNIE O'CONNELL, JUDGE |
|  | ACTION NOS. 21-CI-007148 & 22-CI-001338 |

MILLERS LANE CENTER, LLC, A
KENTUCKY LIMITED LIABILITY
COMPANY; MILLERS LANE
CENTER, LLC, A FLORIDA LIMITED
LIABILITY COMPANY; AND
MORGAN & POTTINGER, P.S.C.                    CROSS-APPELLEES


AND


NO. 2022-CA-1399-MR


MORGAN & POTTINGER, P.S.C.                    CROSS-APPELLANT


                    CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.              HONORABLE ANNIE O'CONNELL, JUDGE
                    ACTION NOS. 21-CI-007148 & 22-CI-001338


MILLERS LANE CENTER, LLC, A
KENTUCKY LIMITED LIABILITY
COMPANY; JAMES P.
MCCROCKLIN; MARK BREWER;
MILLERS LANE CENTER, LLC, A
FLORIDA LIMITED LIABILITY
COMPANY; AND MOSLEY &
TOWNES, PLLC                                   CROSS-APPELLEES


AND


NO. 2022-CA-1368-MR


MARK BREWER                                    APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.              HONORABLE ANNIE O'CONNELL, JUDGE
                    ACTION NOS. 21-CI-007148 & 22-CI-001338

MORGAN & POTTINGER, P.S.C.;
JAMES P. MCCROCKLIN; AND
MOSLEY & TOWNES, PLLC                                    APPELLEES

AND

NO. 2022-CA-1400-MR

JAMES P. MCCROCKLIN AND
MOSLEY & TOWNES, PLLC                          CROSS-APPELLANTS

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE ANNIE O'CONNELL, JUDGE
            ACTION NOS. 21-CI-007148 & 22-CI-001338

MARK BREWER; MILLERS LANE
CENTER, LLC, A KENTUCKY LLC;
MILLERS LANE CENTER, LLC, A
FLORIDA LLC; AND MORGAN &
POTTINGER, P.S.C.                               CROSS-APPELLEES

AND

NO. 2022-CA-1402-MR

MORGAN & POTTINGER, P.S.C.                        CROSS-APPELLANT

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE ANNIE O'CONNELL, JUDGE
            ACTION NOS. 21-CI-007148 & 22-CI-001338

MARK BREWER; JAMES P.
MCCROCKLIN; MILLERS LANE
CENTER, LLC A FLORIDA LIMITED
LIABILITY COMPANY; MILLERS
LANE CENTER, LLC A KENTUCKY
LIMITED LIABILITY COMPANY;
AND MOSLEY & TOWNES, PLLC                    CROSS-APPELLEES


OPINION AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  EASTON, KAREM, AND TAYLOR, JUDGES.

EASTON, JUDGE:  These appeals involve two professional negligence

(specifically legal malpractice) cases consolidated by the circuit court.  Millers

Lane Center,[1] LLC, a Kentucky limited liability company ("Millers KY"), filed a

malpractice suit against Morgan & Pottinger, P.S.C. ("M&P"); James P.

McCrocklin ("McCrocklin"); and Mosley & Townes, PLLC ("M&T") (collectively

"Attorneys").  Millers Lane Center, LLC, a Florida limited liability company

("Millers FL"), and Mark Brewer ("Brewer"), a member of both LLCs, filed a

later, separate malpractice suit against the Attorneys.

The Jefferson Circuit Court entered a Consolidated Opinion and Order

dismissing the claims of Millers KY in the first suit for lack of standing as that

---

[1] At various points in this record, references are made to the LLCs as Millers Center or Millers
Lane Center.  The latter appears to be correct.

entity was not represented by any of the Attorneys. The circuit court also dismissed the claims of Millers FL because it had assigned any proceeds of its malpractice claim, depriving it of standing to pursue such a claim. The circuit court held Brewer lacked standing to recover damages for the alleged lost value in his membership interest in either Millers FL or Millers KY. The circuit court declined to dismiss Brewer's claim for emotional distress and expenses incurred in collateral litigation, citing a need for additional discovery for these claims.

Millers KY and Millers FL filed the first appeal (No. 2022-CA-1341-MR), and Brewer filed a separate appeal (No. 2022-CA-1368-MR). Separate cross-appeals were filed by M&P (Nos. 2022-CA-1399-MR and 2022-CA-1402-MR) and McCrocklin with M&T (Nos. 2022-CA-1398-MR and 2022-CA-1400-MR). The cross-appeals challenge the circuit court's determination that the second lawsuit filed by Millers FL and Brewer was not time-barred by the statute of limitations. After extensive briefing by the parties, the matter is before this Court for decision. Because of the overlap of the controlling issues for all these appeals, we will enter this single Opinion in the matter. While the ultimate resolution of the cases results from the application of the limitations period, we will see that this case illustrates the danger in disregarding the separate legal status of corporate entities.

After a review of the record, and for the reasons which follow, we affirm in part, reverse in part, and remand the Consolidated Opinion and Order of the circuit court. We affirm the circuit court's conclusion that Millers KY lacked standing to bring a malpractice action because it did not have an attorney-client relationship with any of the Attorneys regarding the representation which resulted in litigation. While we affirm the circuit court's conclusion that Millers FL's claim cannot proceed, we do so for different reasons. We conclude the claims of both Millers FL and Brewer are time-barred by the applicable one-year statute of limitations. We reverse on the cross-appeal regarding Brewer's claims, and we remand to the circuit court to enter an order dismissing those claims.

## FACTUAL AND PROCEDURAL HISTORY

Millers FL was organized in 2005. Millers FL registered to do business in Kentucky as a foreign LLC. Brewer and Harold Harr ("Harold") were the two members of this company. Harold's son, Chris Harr ("Chris"), was not a member but was involved with his father's business.

Millers FL owned and operated a warehouse, storage, and distribution center located at 2501 Millers Lane in Louisville (the "Premises"). Millers FL leased warehouse space in the Premises to tenants for various purposes, including storage and conducting business within the leased space. Blue Sky, Inc. ("Blue

Sky") was one such tenant, renting a 26,000 square foot warehouse in 2013 to conduct its shredding and recycling business.

By late 2014, Blue Sky had fallen behind in its rent payments. Blue Sky failed to pay its monthly rent on November 1, 2014. M&P provided legal advice and representation to Millers FL regarding its dispute with Blue Sky. Attorneys with M&P allegedly advised Millers FL that Blue Sky could be "locked out" of the Premises for failure to pay rent and that a statutory lien could be enforced against Blue Sky's personal property on the Premises.

On November 10, 2014, Blue Sky was locked out of the Premises. Two weeks later, Blue Sky's personal property was sold. For some reason, there were no bidders for this substantial amount of property, and Chris reported paying $1 for all of it. Acting at the behest of Harold and Chris, an attorney for M&P organized a new company, Millers Lane Shredding & Recycling, LLC, which exerted ownership over Blue Sky's property. The new company took over Blue Sky's recycling business, including its leased space, equipment, employees, customers, and vendors.

In February 2015, Blue Sky filed suit against Millers FL, Millers Lane Shredding & Recycling, LLC, Brewer, Harold, and Chris. Blue Sky alleged numerous claims, including conversion and breach of contract. M&P initially undertook the defense of all the defendants.

On March 28, 2016, while Blue Sky's suit was still pending, Brewer organized and formed a new business entity: Millers KY, a third Millers LLC. That same day, Brewer filed a Certificate of Withdrawal of Foreign Business Entity with the Kentucky Secretary of State, advising that Millers FL was no longer transacting business in Kentucky, although it still owned the Premises. Millers FL and Millers KY never merged. Millers FL is still active and in good standing with the state of Florida. Millers FL did not transfer title to the Premises to Millers KY upon the creation of Millers KY. Millers KY was never added or substituted as a party-defendant to the Blue Sky lawsuit. There is no evidence that M&P had any attorney-client relationship with Millers KY, although the Attorneys may have been aware of its creation.

In May 2016, M&P was granted leave to withdraw from the Blue Sky case. McCrocklin took over the representation of the defendants in the Blue Sky suit. McCrocklin did not enter an appearance for Millers KY as that entity was never a party to the litigation. McCrocklin became affiliated with M&T during the Blue Sky lawsuit.

The parties to the Blue Sky litigation appeared to have reached a settlement in December 2016. Millers FL agreed to pay Blue Sky $22,500. McCrocklin prepared the settlement agreement, which was executed by the representative of Blue Sky. Millers FL delivered a certified check in the amount of

$22,500 to McCrocklin. But Harold instructed McCrocklin to renege on the settlement agreement and not deliver the check to Blue Sky. McCrocklin never delivered the check or the agreement to Blue Sky's counsel. McCrocklin did not seek to proceed with the agreement on behalf of Millers FL or Brewer.

After this failed settlement attempt, Blue Sky's lawsuit proceeded to trial in April 2018. The jury awarded Blue Sky $1,578,406.66 in compensatory damages. That is seventy times the previous settlement demand from Blue Sky. The circuit court subsequently entered its Judgment on Jury Verdict, ordering a judgment with interest entered against the defendants, jointly and severally. All defendants appealed the Judgment. Millers FL and Brewer retained new counsel for the appeal.

During the pendency of the appeal (with no supersedeas bond posted), Blue Sky engaged in collection efforts on its Judgment. Blue Sky filed a separate lawsuit against Brewer and his wife, seeking to set aside allegedly fraudulent transfers of real estate to avoid creditors. Subsequently, Millers KY filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Kentucky under case number 19-32095. The stated reason for Millers KY's bankruptcy filing was the inability to pay the judgment in the Blue Sky lawsuit (even though Millers KY was not a party to the suit and did not own the Premises).

The bankruptcy petition was filed on July 2, 2019, by Brewer as Millers KY's "Managing Member." Millers KY was listed as "Debtor" while Millers FL curiously was listed as "Petitioning Creditor," indicating an obvious understanding by the members that the LLCs were separate entities. Millers KY and Millers FL were represented by separate counsel in the bankruptcy. Blue Sky was listed as a creditor in light of its judgment against Millers FL. Millers KY listed "contingent and unmatured malpractice claims" against McCrocklin and Thomas Coffey (an attorney with M&P who represented the defendants in the Blue Sky litigation before McCrocklin entered an appearance) as assets of the bankruptcy estate.

In July 2020, this Court affirmed the Judgment from the jury trial but remanded the case to the circuit court for a trial on punitive damages.[2] In August 2020, Millers FL and Brewer filed a Motion for Discretionary Review with the Kentucky Supreme Court.

While the Motion for Discretionary Review was pending, the Bankruptcy Court conducted a mediation in December 2020. Millers KY reached a global settlement (the "Settlement Agreement") dated December 18, 2020, with its creditors (including Blue Sky). Blue Sky was to receive $2.7 million. The

---

[2] *Blue Sky, Inc. v. Millers Lane Center, LLC*, Nos. 2018-CA-001160-MR, 2018-CA-001205-MR, 2018-CA-1217-MR, 2020 WL 4500590 (Ky. App. Jul. 17, 2020).

Attorneys were not signatories. Millers FL did not sign the Settlement Agreement either, but a subsequent decision by the bankruptcy court would render that moot.

The Settlement Agreement allocated proceeds of any future legal malpractice claims purportedly to divest Millers FL of that claim, rather than direct Millers FL as to whom any proceeds should be paid if Millers FL prevailed on a malpractice claim. Millers FL allocated all its assets to repay shareholder loans and to members of Millers KY based on their percentage ownership interests. Brewer then stood to receive his percentage ownership interest in whatever was left of Millers KY.

On February 18, 2021, the Bankruptcy Court entered its Order Confirming Amended Chapter 11 Small Business Plan ("Confirmation Order"). The Confirmation Order noted Millers KY (as Debtor) and Millers FL (as Petitioning Creditor) "disregarded their legal separateness" when dealing with creditors prior to the filing of bankruptcy. Creditors were confused as a result. Therefore, the Confirmation Order stipulated that the separate assets of Millers KY and Millers FL were to be pooled for purposes of the bankruptcy.

Section 5. Substantive Consolidation of the Confirmation Order reads:

5. Substantive Consolidation. Prior to the Petition Date, the Debtor and Millers Lane Center, LLC, a limited liability company organized under the laws of the State of Florida ("MLC Florida"), disregarded their legal separateness in dealing with their creditors and their creditors relied on the Debtor and MLC Florida's unity of

-11-

interests and operations as though the Debtor and MLC Florida were a single legal entity. Accordingly, as provided for in the Plan, this Confirmation Order approves and directs the substantive consolidation of the Debtor with MLC Florida such that the distinctions between the two entities shall be disregarded upon the entry of this Confirmation Order, and all assets and liabilities of the Debtor and MLC Florida, including without limitation the real property commonly identified as 2501 Millers Lane, Louisville, Kentucky, 2551 Millers Lane, Louisville, Kentucky, and 2571 Millers Lane, Louisville, Kentucky, are deemed to be assets and liabilities of the Debtor and **treated as such in implementation of the Plan and this Confirmation Order. The Debtor is authorized and directed to execute and file such instruments in appropriate jurisdictions to give effect to the substantive consolidation ordered herein**.

(Emphasis added.) Despite the clear directive of the Bankruptcy Court in this provision, Millers KY and Millers FL did nothing to effectuate a consolidation or merger, such as filing appropriate documents with the respective Secretaries of State.

On March 17, 2021, the Kentucky Supreme Court granted the Motion for Discretionary Review. The bankruptcy proceedings continued. As directed by the Settlement Agreement, the Premises was sold on March 24, 2021, for $4,450,000. Millers KY paid its creditors (including Blue Sky in full), leaving $290,000 in equity to be divided among its members. After the sale, the Supreme Court was notified that the Judgment was satisfied pursuant to the Bankruptcy Court's Settlement Agreement. The appeal was subsequently dismissed.

-12-

On December 20, 2021, Millers KY filed a lawsuit against the Attorneys in Jefferson Circuit Court under case number 21-CI-007148 ("2021 Action"). In Paragraph 2 of this Complaint, Millers FL was mentioned only as a "prior" LLC replaced by Millers KY. Millers KY alleged M&P committed malpractice for the following reasons: (1) by advising the company to lock Blue Sky out of the Premises and selling Blue Sky's personal property; (2) by failing to obtain from the defendants consent to multiple representation with a waiver of conflicts of interest; (3) by failing to adequately defend Miller KY on the basis that the LLC was not responsible for either Harold's unauthorized, intentional acts, or those of Chris, who was not a member of the LLC; and (4) by failing to defend Brewer on the basis he was entitled to immunity from personally liability pursuant to KRS[3] 275.150.

Millers KY also alleged McCrocklin and M&T committed legal malpractice for the following reasons: (1) by mistakenly relying on a defense characterizing the Premises as a "self-service storage facility"; (2) by failing to obtain from the defendants consent to multiple representation with a waiver of conflicts of interest; (3) by failing to raise any defense that the LLC was not liable for any intentional and unauthorized acts of Harold; (4) by failing to argue the LLC

---

[3] Kentucky Revised Statutes.

was not responsible for the acts of non-member Chris; (5) by failing to deliver the settlement check or settlement agreement to Blue Sky's counsel; (6) by failing to adequately prepare a defense for the LLC at trial, and instead focusing the defense on the claims asserted against Harold and Chris; (7) by failing to present the testimony of a forensic accountant whose testimony would have minimized damages sustained by Blue Sky; (8) by not asking for an apportionment instruction despite overwhelming evidence showing the wrongdoers were actually Harold and Chris; and (9) by failing to tender jury instructions that would have allowed the jury to exonerate Brewer if the jury found he had not engaged in any unauthorized conduct.

M&P moved to dismiss the 2021 Action for failure to state a claim pursuant to CR[4] 12.02(f). M&P argued it represented Millers FL, not Millers KY, and consequently, Millers KY was not the real party in interest pursuant to CR 17.01[5] and had no standing to file the complaint. M&P stated Millers FL and not

[4] Kentucky Rules of Civil Procedure.

[5] Every action shall be prosecuted in the name of the real party in interest, but a personal representative, guardian, curator, committee of a person of unsound mind, trustee of an express trust, a person with whom or in whose name a contract is made for the benefit of another, a county, municipal corporation, public board or other such body, a receiver appointed by a court, the assignee or trustee of a bankrupt, an assignee for the benefit of creditors, or a person expressly authorized by statute to do so, may bring an action without joining the party or parties for whose benefit it is prosecuted. Nothing herein, however, shall abrogate or take away an individual's right to sue.

-14-

Millers KY was the true owner of any malpractice claim. McCrocklin and M&T also filed a motion to dismiss the 2021 Action for the same reasons.

After these motions to dismiss were filed, Millers KY filed a motion for leave to file an amended complaint to name Millers FL as an additional party-plaintiff. Millers KY also filed responses to the motions to dismiss. Millers KY did not then dispute the existence of Millers FL or that Millers FL was the actual client of M&P, and later, of M&T and McCrocklin. Instead, Millers KY argued the Bankruptcy Court's Confirmation Order effectively merged the Kentucky and Florida entities for all purposes.

On March 16, 2022, Millers FL and Brewer filed a separate complaint against M&P, McCrocklin, and M&T in Jefferson Circuit Court under case number 22-CI-001338 ("2022 Action"). Millers FL made substantially identical claims as those included in the 2021 Action. Brewer alleged the original Blue Sky lawsuit had caused him emotional distress, depreciation of his membership interest in Millers FL, and expenses incurred in collateral litigation (the litigation Blue Sky separately filed against Brewer and his wife alleging fraudulent transfers of real estate). Brewer did not allege that either M&P or M&T and McCrocklin represented him in that collateral litigation. M&P filed a motion to dismiss the 2022 Action. In that same later case, McCrocklin and M&T filed a motion for summary judgment pursuant to CR 56.

-15-

In April 2022, the 2022 Action was transferred and consolidated with the 2021 Action. A final hearing on all pending motions was held on July 25, 2022. On October 14, 2022, the circuit court entered a Consolidated Opinion and Order as to both the 2021 and 2022 Actions. Because the motions to dismiss referred to matters outside the pleadings, the court treated all motions to dismiss as motions for summary judgment.

The circuit court dismissed the 2021 Action as the plaintiff in that case, Millers KY, had no standing to bring malpractice claims against either M&P or M&T and McCrocklin. The circuit court recognized that none of the Attorneys ever represented Millers KY, noting that an attorney client relationship "is a prerequisite to pursue a professional negligence claim." The court added that, since no judgment was entered against it, Millers KY suffered no damages stemming from the Blue Sky litigation.

The circuit court did not agree with Millers KY's position that the Bankruptcy Court's Confirmation Order effectively merged the Kentucky and Florida entities. The circuit court ruled that the Bankruptcy Court's decision to "substantively consolidate" Millers KY and Millers FL for the purposes of bankruptcy did not give Millers KY standing to bring the 2021 Action ("[A] bankruptcy court's determination that a malpractice claim is an asset of an entity is not controlling as to whether that party has standing to pursue the claim in any

state court litigation."). The circuit court noted the Confirmation Order instructed the two entities to file appropriate documents with the respective Secretaries of State for Kentucky and Florida to effectuate the merger outside bankruptcy proceedings – which was not done. The circuit court ruled that, since legal malpractice claims may not be assigned, either formally or informally, under Kentucky law, Millers FL, and not Millers KY, was the only entity that could file a malpractice claim stemming from the Blue Sky lawsuit.

The circuit court next analyzed together Millers KY's motion for leave to file an amended complaint in the 2021 Action to add Millers FL as a party-plaintiff, as well as the dispositive motions relating to the 2022 Action. The circuit court dismissed the claims of Millers FL based on lack of standing to pursue a claim against any of Attorneys. The circuit court held that Millers FL assigned all its assets in the bankruptcy proceedings to repay shareholder loans and members of Millers KY based on their percentage ownership interests. In other words, Millers FL would receive nothing according to the Settlement Agreement. The circuit court found, that under the Settlement Agreement, Millers KY retained as an asset any malpractice action arising out of the Blue Sky lawsuit: "[Millers Lane KY] agreed to this provision irrespective of whether it would have standing to pursue a legal malpractice action given that [Millers FL] was the defendant in the Blue Sky litigation."

The circuit court held that Brewer lacked standing to recover damages for the alleged lost value in his membership interest in either Millers FL or Millers KY. The circuit court also found Brewer suffered no individual loss from the adverse judgment as corporate assets were used to satisfy the Judgment. However, the court determined Brewer had standing to recover fees and costs he personally paid in the Blue Sky lawsuit, as well for any injury he suffered because of Blue Sky's post judgment collection actions against him and his wife. The court added the defendants could file a dispositive motion regarding Brewer's surviving claims after adequate discovery.

The circuit court did not dismiss Millers FL's claims or Brewer's claims based on the one-year statute of limitations governing professional negligence claims. The circuit court ruled Millers FL's alleged damages for professional negligence did not become "fixed and non-speculative" until March 18, 2021, the date the Bankruptcy Court authorized the sale of the Premises as directed by the Settlement Agreement. The circuit court reckoned that, since Millers FL and Brewer filed the 2022 Action on March 16, 2022, it was within one year of the sale of the Premises, and thus it was not time-barred. These appeals followed.

## ISSUES

We are called upon to answer several legal questions. The first question is whether Millers KY was the real party in interest under CR 17.01, or had "standing," to file the 2021 Action. Next, we will determine whether the Bankruptcy Court's "substantive consolidation" effectively merged the Kentucky and Florida LLCs. Then, we will determine whether the circuit court erred in holding Millers FL had no standing to bring the 2022 Action due to its assignment of the malpractice claim, and that Brewer had no standing to recover damages for the alleged lost value in his membership interest. We will also analyze whether the circuit court erred in not dismissing the 2022 Action in its entirety for being filed outside the applicable statute of limitations period.

## STANDARD OF REVIEW

In its Consolidated Opinion and Order, the circuit court considered matters outside the pleadings when reviewing the motions to dismiss. "Where matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion must be treated as one for summary judgment." *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533 (Ky. App. 2005).

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine

-19-

issues as to any material fact and that the moving party was entitled to judgment as a matter of law.  Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (internal quotation marks and citations omitted).  "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

Although CR 56.02 permits parties to move for summary judgment at any time, Kentucky courts are cautioned "not to take up these motions prematurely and to consider summary judgment motions only after the opposing party has been given ample opportunity to complete discovery." *Bowlin Group, LLC v. Rebennack*, 626 S.W.3d 177, 187 (Ky. App. 2020) (citation omitted).  The question is not whether the nonmoving party has actually completed discovery. Instead, the question is whether the nonmoving party had an opportunity to complete discovery.  *Id.* at 187-88 (citation omitted).

As the preceding detailed account of dates and events reveals, the material facts with respect to the status of the parties and the application of the statute of limitations are not disputed.  Rather, the parties argue the law as applied

-20-

to those facts.  In this case, summary judgment was not premature for any failure to allow further discovery.

## MILLERS KY WAS NOT THE REAL PARTY IN INTEREST PURSUANT TO CR 17.01.

Millers KY and Millers FL challenge the circuit court's dismissal of their claims based on lack of standing.  The circuit court's Consolidated Opinion and Order analyzed whether the Millers entities had constitutional standing under *Commonwealth Cabinet for Health & Family Services, Department for Medicaid Services v. Sexton, by & through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185 (Ky. 2018).  In that case, the Kentucky Supreme Court adopted the test of constitutional standing as espoused by the United States Supreme Court in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).  For a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by the following three requirements:  (1) injury, (2) causation, and (3) redressability.  *Sexton*, *supra*, at 196.

Sometimes the perhaps broader question of constitutional standing to assert claims is confused with the definition of the real party in interest under CR 17.01, which status confers upon a party the right to bring an action under the civil rules.  "The real party in interest is the party who will be entitled to the benefits of the action upon a successful termination thereof; one who is actually and

-21-

substantially interested in the subject matter." *Combs v. Richards*, 63 S.W.3d 193, 194 (Ky. App. 2001). We will analyze "standing" here by evaluating whether Millers KY is the real party in interest for the malpractice claims pursuant to CR 17.01.

As previously mentioned, the circuit court ruled Millers KY did not have standing to bring a malpractice claim in the 2021 Action as it did not have an attorney-client relationship with any of the Attorneys. A plaintiff in a legal malpractice action must prove the following to prevail: (1) there was an employment relationship with the defendant/attorney; (2) the attorney neglected his or her duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) the attorney's negligence was the proximate cause of damage to the client. *Stephens v. Denison*, 64 S.W.3d 297, 298-99 (Ky. App. 2001).

Millers FL was the client of the Attorneys throughout the Blue Sky litigation, not Millers KY. Blue Sky filed its lawsuit in February 2015. The suit was based upon actions by Millers FL. Millers KY did not exist until March 2016, and it was never added or substituted as a party-defendant to the Blue Sky lawsuit. Millers FL and Millers KY never merged outside of and for the purposes of the bankruptcy case. None of the Attorneys ever represented Millers KY. Millers KY was not the real party in interest under CR 17.01 to file a malpractice claim against

the Attorneys.  The circuit court did not err in dismissing the claims of Millers KY in the 2021 Action.

**THE BANKRUPTCY COURT'S DECISION TO "SUBSTANTIVELY CONSOLIDATE" MILLERS KY AND MILLERS FL FOR THE PURPOSES OF BANKRUPTCY DID NOT MERGE THE TWO ENTITIES.**

Millers KY and Millers FL argue the Bankruptcy Court directed the "substantive consolidation" of the two entities and deemed all assets in bankruptcy to be those of Millers KY.  They argue the claims of Millers KY were not assigned to it by Millers FL, nor was an assignment necessary, due to this ostensible merger by the Bankruptcy Court.

Substantive consolidation is an equitable doctrine used by bankruptcy courts pursuant to which creditors of a given corporate entity may seek to merge assets and liabilities of a debtor with the assets and liabilities of one or more other entities.  *In re New Century TRS Holdings, Inc.*, 407 B.R. 576, 591 (D. Del. 2009).  This remedy is to address the harms caused by debtors (and their related entities) by disregarding their separateness or otherwise entangling their affairs.  *Id.*

The argument that the consolidation goes further than the bankruptcy proceeding fails for several reasons.  First, the doctrine of substantial consolidation "is uniquely a matter of bankruptcy law, and its application is limited to bankruptcy cases."  *In re Petters Co., Inc.*, 506 B.R. 784, 792 (D. Minn. 2013).  Substantial consolidation does not affect state law on who is the proper party to file

-23-

an action.  The Bankruptcy Court's order to substantially consolidate the two entities for the purposes of the bankruptcy proceedings did not effectively merge the entities in a state court setting.

Substantial consolidation is punitive in nature.  The Millers entities did not address their business affairs separately.  Debtors were left confused. Millers KY used Millers FL's federal tax identification number on documents, ignoring the reality that every LLC is a separate corporate person with separate tax liabilities.  While substantive consolidation may be used defensively to remedy identifiable harms to others caused by entangled affairs, it may not be used offensively as attempted by the Millers LLCs here.  *See In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).

As directed by the Bankruptcy Court, Millers KY and Millers FL could have followed that court's order to "execute and file such instruments in appropriate jurisdictions to give effect to the substantive consolidation ordered herein."  Instead, they did nothing resulting in two separate LLCs continuing to exist.

## THE CLAIMS OF MILLERS FL AND BREWER ARE TIME-BARRED.

As previously mentioned, the circuit court found that the 2022 Action filed by Millers FL and Brewer was not time-barred.  Instead, the circuit court held that Millers FL had no standing due to its assignment of the malpractice claim, and

that Brewer had no standing to recover damages for the alleged lost value in his membership interest in either Millers FL or Millers KY. On this last point, we agree with the circuit court. Brewer could not claim damages for any reduction in the value of his membership interest in an LLC because of its liability to others. *See Turner v. Andrew*, 413 S.W.3d 272, 276 (Ky. 2013).

As for assignment, the Settlement Agreement required Millers FL to allocate its remaining assets to repay shareholder loans and to members of Millers KY. The circuit court held that because of this, Millers FL no longer owned a malpractice claim against the law firms that represented it. The circuit court also held that Millers KY had no standing to bring any malpractice claim Millers FL had as Kentucky law prohibits the assignment of a legal malpractice claim. *Davis v. Scott*, 320 S.W.3d 87, 90 (Ky. 2010).

We do not agree with the circuit court's determination that Millers FL had no standing due to that entity attempting to assign away its legal malpractice claim. The circuit court is correct that Kentucky law prohibits the assignment of a legal malpractice claim of Millers FL to Millers KY or anyone else. However, the circuit court's determination that Millers FL assigned its malpractice claim away is erroneous. Assignment is prohibited. It has no effect. If the malpractice claim could not be assigned to Millers KY, then Millers FL still had the claim. The claim belonged to someone; it was not in limbo. Millers FL remained the real

-25-

party in interest and had standing to bring the 2022 Action alleging the malpractice.

Even though Millers FL and Brewer were the real parties in interest and thus had standing for the claims asserted in 2022, they run into the barrier of the statute of limitations. This segues into the Attorneys' Cross-Appeals arguing Millers FL and Brewer filed the 2022 Action after the statute of limitations period had passed.

There is a one-year statute of limitations to bring actions alleging malpractice in the rendering of professional services. KRS 413.245. This statute allows for two different periods of limitation: "The first period begins one year from the date of the negligent act or omission (the date of occurrence), and the second period begins on the date of discovery if it is later in time." *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 264 (Ky. App. 2008). We should look at both periods to answer whether a lawsuit is time-barred. We must recognize that accrual of a cause of action can determine when an occurrence has taken place or when the party discovers the existence of the claim.

Under the "occurrence" limitation period, a cause of action accrues when negligence and damages have both occurred. *Lane v. Richards*, 256 S.W.3d 581, 583 (Ky. App. 2008). The damages must be "reasonably ascertainable" –

meaning they are "irrevocable [and] non-speculative[.]" *Saalwaechter v. Carroll*, 525 S.W.3d 100, 105 (Ky. App. 2017).

The "discovery" limitation period begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered by the plaintiff. *Queensway Financial Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 148 (Ky. 2007). "The discovery rule acts to toll the statute of limitations until the claimant knows, or reasonably should know, that injury has occurred." *Wolfe v. Kimmel*, 681 S.W.3d 7, 13 (Ky. 2023) (internal quotation marks and citation omitted). As a result, the discovery date is only implicated if a complaint for professional malpractice was not filed within one year of the occurrence date, and it "often functions as a 'savings' clause or 'second bite at the apple' for tolling purposes." *Id.* (citation omitted).

In this case, the circuit court held the respective claims of Millers FL and Brewer were not barred by the statute of limitations because the alleged damages did not become "fixed and non-speculative" until March 18, 2021, the date the Bankruptcy Court authorized the sale of the Premises under the terms of the Settlement Agreement. Thus, according to the circuit court, they were within the statute of limitations when they filed the 2022 Action on March 16, 2022.

We must disagree. We conclude that the date the alleged damages became "fixed and non-speculative" was when the Settlement Agreement was

reached on December 18, 2020, resolving the Blue Sky lawsuit. In triggering the statute of limitations period, "fixed and non-speculative" does not mean that damages must be translatable into a specified dollar amount. *Bd. of Educ. of Estill Cnty., Kentucky v. Zurich Ins. Co.*, 180 F. Supp. 2d 890, 893 (E.D. Ky. 2002), *aff'd sub nom. Estill Cnty. Bd. of Educ. v. Zurich Ins. Co.*, 84 F. App'x 516 (6th Cir. 2003). Instead, "the phrase is more properly interpreted as tolling the limitations period for professional negligence claims until plaintiff is certain that damages will indeed flow from defendant's negligent act." *Id.* at 894.

The malpractice claims in this case are for both transactional (advice before suit) and litigation (conduct during suit) negligence. In these circumstances we should look to the latest possible time a claim could be made. In this case, we evaluate the litigation negligence which followed the related transactional malpractice as the same attorney represented the client during this transition.

In *Hibbard v. Taylor*, 837 S.W.2d 500 (Ky. 1992), the Kentucky Supreme Court ruled that the date of occurrence for a client's legal malpractice claim against his attorney for litigation negligence was the date the underlying case's appellate decision became final, which put the client on notice that the adverse judgment was unalterable, and the damages were proximately caused by alleged malpractice of his attorney, rather than by error of trial court. "Where . . . the cause of action is for 'litigation' negligence, meaning the attorney's negligence

-28-

in the preparation and presentation of a litigated claim resulting in the failure of an otherwise valid claim, whether the attorney's negligence has caused injury necessarily must await the final outcome of the underlying case." *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994). Because the lawsuit may yet be resolved in the client's favor, a claim of malpractice may not accrue until the lawsuit has been resolved unfavorably.

This "litigation" negligence rule is subject to a more specific limitation which applies to this case. The general point is that when a party knows it has suffered any damages from malpractice, the period begins to run. *Wolfe*, *supra*, at 26. While the litigation conclusion rule may have applied here, settlement trumps that rule, as there can be no question of knowledge of harm when the parties acknowledge to each other the damage done by the alleged malpractice. If parties reach a settlement agreement, the date of that agreement begins the running of the limitation period. This is logical because the parties have each acknowledged that damages have occurred for purposes of the limitations period when they reach a settlement agreement, and the parties have committed themselves to a course of action to satisfy payment owed for the underlying suit.

We are unaware of any published Kentucky case[6] which holds that the date of settlement commences the limitation period. Dependance to any degree on authorities from other states is limited by the wide variety of limitations rules for malpractice across the country. Even so, we have found one case with some similar facts helpful in understanding the logic of the settlement date beginning the limitation period. In *Tchorbadjian v. Western Home Insurance Company*, 46 Cal. Rptr. 2d 370 (Cal. Ct. App. 1995), the court summarized numerous California cases and held that when a settlement was reached for an underlying case, the statute of limitations began to run in a case involving transactional malpractice leading to related litigation malpractice.

The underlying Blue Sky lawsuit was resolved via mediation on December 18, 2020. There was nothing left to litigate. The very last date it could be argued that Millers FL and Brewer were certain that damages flowed from the alleged acts of the Attorneys would be December 18, 2020 – the date of the Settlement Agreement. Even if we accepted the argument that the settlement required court approval of the settlement terms, the date of such approval was no later than February 18, 2021. The second complaint was still filed too late.

---

[6] The parties have cited and discussed *Hughes v. DeMoisey*, Nos. 2010-CA-002093-MR, 2010-CA-002165-MR, 2010-CA-002166-MR, 2014 WL 2632504 (Ky. App. Jun. 13, 2014). In *Hughes*, a panel of this Court held that the date of an oral settlement agreement of underlying litigation began the running of the limitations period for legal litigation malpractice, regardless of a later date for executing a written agreement or filing for dismissal of the underlying case.

As of December 18, 2020, Millers FL, which still existed and held any malpractice claim, and Brewer both knew there would be damages as the Settlement Agreement stipulated Blue Sky's Judgment to be in the amount of $2.7 million. It did not matter who paid the settlement amount or when or how it was to be paid through scheduled sales of assets or otherwise. The law has never required that a plaintiff know the exact amount of damages, which may continue to mount, before an injured person must assert a claim. As a result, the idea that no claim existed until the first LLC assets were sold is misplaced.

It is likely no accident that the first lawsuit by Millers KY was filed on Monday, December 20, 2021. This was the last day to file a suit for the malpractice claims. Millers KY cannot relate back its amended complaint essentially substituting itself with Millers FL under CR 15.03. The circuit court properly denied this. CR 15.03 does not allow courts to relate back amended complaints in order for a plaintiff to add another party-plaintiff, ("An amendment changing the party against whom a claim is asserted relates back if . . ."). The rule relates to substitution of defendants.

As the 2022 Action was filed more than a year after the execution of the Settlement Agreement, all of the claims of Millers FL and Brewer (including the claims not dismissed by the circuit court) are time-barred. Brewer had suffered some of his separate damages (anguish and attorney's fees) even before the

execution of the Settlement Agreement. Brewer's remaining claims should have been dismissed as well as barred by the statute of limitations.

## CONCLUSION

On Appeal No. 2022-CA-1341-MR, we affirm the Jefferson Circuit Court's orders regarding Millers KY's lack of standing to bring a professional malpractice claim. On Appeal No. 2022-CA-1368-MR, we affirm the Jefferson Circuit Court's order dismissing the claims of Millers FL; however, we do so based on the one-year statute of limitations. Furthermore, we reverse on the cross-appeals based on Brewer's claims, and we remand to the circuit court to enter a dismissal of Brewer's claims and thus the remainder of that action because the statute of limitations period had passed before the filing of the second suit.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANTS MILLER
LANE CENTER, LLC AND MARK
BREWER:

C. Thomas Hectus
Louisville, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT MORGAN &
POTTINGER, P.S.C.:

David J. Kellerman
Mark S. Fenzel
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE/CROSS-APPELLANT
MORGAN & POTTINGER, P.S.C.:

David J. Kellerman
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES/CROSS-
APPELLANTS JAMES P.
MCCROCKLIN AND MOSLEY &
TOWNES, PLLC:

James P. Grohmann
Louisville, Kentucky